UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANTONIO RODRIGUEZ,

    Defendant.
    _____/

File No. 1:09-CR-372

HON. ROBERT HOLMES BELL

**O P I N I O N**

Defendant Antonio Rodriguez is charged with possession with intent to deliver cocaine and heroin. This matter is before the Court on Defendant's motion to suppress, as corrected and supplemented (Dkt. Nos. 14, 15, 18), in which he seeks suppression of evidence seized during a warrantless search of his vehicle. An evidentiary hearing was held on Thursday, March 11, 2010. For the reasons that follow, Defendant's motion to suppress will be denied.

**I.**

A video-recording was made of the traffic stop at issue in this case. The Court carefully reviewed the recording from the time of the stop to the time the vehicle was taken to the State Police post. The Court makes the following findings of fact based upon the testimony of Michigan State Police Trooper Dennis Diggs, the exhibits received at trial, and the video recording of the traffic stop.

Diggs has been a Michigan State Police Trooper for almost sixteen years. He has been trained in the interdiction of narcotic drugs and hidden compartments. During the two years that he has been assigned to I-94, he has found several hidden compartments in vehicles he has stopped. The Court found Diggs' testimony to be highly credible. He impressed the Court with his professional, mild-mannered, and non-adversarial demeanor both on the witness stand and during the video-recorded traffic stop.

On the morning of December 1, 2009, Trooper Diggs was parked in the median of I-94, monitoring eastbound traffic, when he noticed a group of three or four vehicles. One of the vehicles, a Kia Sedona van, caught his attention because the driver leaned back in an apparent attempt to hide himself behind the door post as he passed the patrol car and then slowed down, increasing the distance between the van and the other vehicles in the group. The van pulled to within one or two car lengths of a semi-trailer and then followed the semi-trailer at a distance of three or four car lengths.

Diggs followed the van for some distance before activating his lights and pulling the vehicle over near Sawyer Road at approximately 8:36 a.m. Diggs approached the passenger side of the van and advised Defendant, the driver of the van, that he had been driving too closely behind a semi-trailer. Diggs immediately noticed the strong odor of air fresheners. The smell was significant to Diggs because air fresheners are commonly used to mask the odor of narcotics. Diggs asked Defendant where he was going and why. Defendant advised that he was driving to Southfield, Michigan, for his cousin's bachelor party, that the party

was on a Thursday night, and that he did not know when the wedding would be. Diggs thought it was unusual for a bachelor party to be held on a Thursday and for an attendee not to know the date of the wedding. Defendant then advised that he did not own the vehicle that he was driving. This information was also significant to Diggs because it is not uncommon for someone engaging in illegal activity to drive a third party's vehicle.

Diggs directed Defendant to stand in front of the police car while he checked Defendant's license, registration and insurance papers from inside his patrol car. After approximately twelve minutes, Diggs motioned for Defendant to get in the patrol car because it was cold outside. Defendant got in the back seat of the patrol car at approximately 8:52. Diggs advised Defendant that his paperwork "checked out" and that he was going to let him go without a ticket. Diggs returned Defendant's paperwork, advised him of the need to keep a safe distance, gave him some rules of thumb on how to gauge a safe distance, and at 8:53 told him that he was "good to go."

Diggs then said, "Let me ask you something," and began asking Defendant further questions about Defendant's travel, the ownership of the van, Defendant's relationship to his cousin, Defendant's arrest history, and whether there was anything illegal in his vehicle. Had Defendant left the patrol car, or indicated a reluctance to stay and answer the questions, Diggs would have let him go. However, Defendant did not make any effort or request to leave. Diggs talked to him in a non-threatening, non-accusatory manner, and Defendant answered all of his questions. Diggs noticed that when he asked Defendant whether there

was contraband in his car, Defendant showed signs of stress by breaking eye contact and lowering his voice. At 8:57 Diggs asked if he could search Defendant's car, and Defendant consented. Diggs advised that he had some other troopers with him, and asked twice more whether it was alright to search, and Defendant agreed twice more that it was.

Two additional troopers, Troopers Duane Shears and James Gillespie, arrived on the scene. Diggs told Defendant to stand 25 feet in front of the van while they searched it. The troopers quickly determined that the van had been modified: the floor rails had been cut, there were non-factory screws in the floor rails, the undercarriage had been spray painted; there was after-market speaker wire by the passenger floor board, but no after-market speakers; there was no room for even a small spare tire in the location where the spare tire normally attached to the frame; and the muffler had been cut off. The troopers suspected that the undercarriage of the vehicle had been "built down" to hold a secret compartment. The troopers initially searched the van by hand. Later they employed power tools. They took out the rear seats and the carpet in the rear of the van. Although the evidence suggested a secret compartment, the troopers were unable to gain access to it.

While the other two troopers were searching the vehicle, Diggs returned to his patrol car and contacted the El Paso Intelligence Center ("EPIC") to run a check on Defendant. He learned that Defendant was listed as a subject in a current investigation by the Drug Enforcement Agency in Chicago.

At 9:27 Diggs motioned Defendant back to the patrol car. The troopers explained that they had found things that were not right with the van, and that they wanted to bring it somewhere where they could search it more thoroughly. They advised Defendant that he was not being arrested, but was merely being detained. At 9:29 they handcuffed him, patted him down, and placed in the patrol car where he was given his *Miranda* rights.

Defendant's car was driven to the Michigan State Police Bridgman Post and searched again. A trained narcotics dog alerted on the rear compartment of the van. When battery cables were applied to the after-market speaker wire, a latch unlocked, and the troopers were able to raise a section of the floor to reveal a hidden compartment under the rear seat. The troopers found and seized two kilograms of heroin and ten kilograms of cocaine. Two more kilograms of heroin were found during a later search of the front of the vehicle.

**II.**

Defendant challenges the legality of the search. He contends that he was detained long after the purpose of the initial traffic stop had ended without any reasonable and articulable suspicion that criminal activity was afoot. He accordingly contends that his consent to search and the evidence recovered from his vehicle must be suppressed as the fruit of an unlawful search and seizure.

**A. The Traffic Stop**

Defendant contends that all of the evidence is subject to suppression because the trooper did not have probable cause for the traffic stop, and the evidence is the fruit of that illegal traffic stop.

5

"[P]olice may make a stop when they have probable cause to believe a civil traffic violation has occurred, even if the defendant raises a claim that the stop was pretextual." *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007) (citing *Gaddis v. Redford Twp.*, 364 F.3d 763, 770 (6th Cir. 2004)). Defendant was stopped for violating Mich. Comp. Laws § 257.643(1), which provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon, and the condition of, the highway." A rule of thumb used by the Michigan State Police to determine a reasonable and prudent distance is one car length for every ten miles per hour of speed. Diggs testified that Defendant was following only one or two car lengths and then three or four car lengths behind the semi-trailer while he was driving at a speed approaching seventy miles per hour.

During his conversation with Diggs in the back of the patrol car, Defendant did not deny traveling too close. He presented no evidence at the evidentiary hearing to contradict or to cast doubt on Diggs' testimony that he was driving too close. The Court concludes that Diggs had probable cause to believe a civil traffic violation had occurred.

## B. Consensual Questioning or Investigatory Detention

Defendant contends that after the purpose of the initial stop was completed, he continued to be detained for questioning. Defendant contends that this continued detention was illegal because it was not based on articulable reasonable suspicion.

6

The focus of Defendant's motion is on the time period beginning at 8:53, when he when he was told he was "good to go," to 8:57, when he consented to the search of his vehicle. During this four-minute time period, Defendant was seated in the rear seat of the patrol car and answered questions posed by Diggs.

Diggs acknowledged that when he told Defendant that he was "good to go," the purpose of the traffic stop was complete. It is well-settled that "[o]nce the purpose of a traffic stop is completed, a police officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008) (citations and internal quotations omitted).

Not every communication between a police officer and a citizen at the conclusion of a traffic stop can be construed as a detention. The Sixth Circuit has held that "police officers do not violate the Fourth Amendment by asking an individual questions after the initial stop has ended." *United States v. Branch*, 537 F.3d 582, 588 (6th Cir. 2008) (citing *United States v. Erwin*, 155 F.3d 818, 823 (6th Cir.1998) (en banc)). In *Branch* the officer told Branch that he was free to leave after giving him a warning citation, but asked if he would mind staying to answer a few more questions. Branch agreed. *Id.* at 585. The court held that because Branch was not seized within the meaning of the Fourth Amendment, the officer did not need any reasonable suspicion to ask him further questions. *Id.* at 588.

It is only continued detention or seizure that would trigger the need for reasonable articulable suspicion. In determining whether a person was seized or detained, the issue is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)); *see also Florida v. Bostick*, 501 U.S. 429, 439 (1991) ("[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter."). "[T]he 'reasonable person' test presupposes an innocent person." *Bostick*, 501 U.S. at 438. The duration of the detention is not relevant. "Under the Fourth Amendment, even the briefest of detentions is too long if the police lack a reasonable suspicion of specific criminal activity." *United States v. Urrieta*, 520 F.3d 569, 578 (6th Cir. 2008).

In *United States v. Townsend*, 305 F.3d 537 (6th Cir. 2002), the court found a continued investigatory detention requiring reasonable articulable suspicion where the officer had ordered the defendants to sit in the back of the patrol car until a canine unit arrived. *Id.* at 540-41. In *United States v. Dunson*, 940 F.2d 989 (6th Cir. 1991), where the officer had already issued a warning and returned the defendant's licence, and the police car was parked behind the defendant's car and was not preventing it from being driven off, the court found

8

no detention because a reasonable person would have felt free to decline the officer's request to search the car. *Id.* at 994.

Defendant contends that as a matter of common sense and experience, an officer's motioning or inviting a stopped motorist into the back seat of the patrol car is tantamount to an order to get in the car. He contends that once he was in the patrol car a reasonable person would not have felt free to leave when the Trooper continued to ask him questions. Defendant contends that after he was told he was good to go, he continued to be detained because he was seated in the back of the patrol car pursuant to the trooper's implied command to get in when the Trooper began asking him additional questions, and a reasonable person would not have felt free to leave. The government denies that Defendant was detained after he was told he was good to go. According to the government, Defendant voluntarily remained in the patrol car to talk with Diggs.

In *Torres-Ramos*, the court found that the defendant was detained when the officer called for a canine unit and placed the defendant in the patrol car for questioning unrelated to the traffic stop. 536 F.3d at 551. In *United States v. Blair*, 524 F.3d 740 (6th Cir. 2008), the court found that the defendant was detained when the officer informed him that he would call a canine unit to the scene after the defendant denied consent to search. *Id.* at 752. In *Townsend*, the court found that the defendants were detained when the officers ordered the defendants to sit in the back of the patrol car and called for a canine unit. 305 F.3d at 540. In *United States v. Bonilla*, No. 08-3461, 2009 WL 4906906 (6th Cir. Dec. 21, 2009)

(unpublished), the court found that the defendant was detained when the officer ceased writing the ticket and placed the defendant and his passenger in separate police vehicles while a drug canine sniffed the car. *Id.* at *5.

The facts of this case differ from the facts of the cases referenced by Defendant. Defendant was motioned to get into the patrol car during the traffic stop so that he would be out of the cold while Diggs returned his paperwork and talked to him about following too closely. Thereafter, his paperwork was returned to him and he was told he was "good to go." This language suggested that any subsequent discussion was consensual. *See United States v. Ledesma*, 447 F.3d 1307, 1315 (10th Cir. 2006) (holding that the trooper's words of farewell suggested that any subsequent discussion was consensual). When Diggs said "let me ask you some questions," Defendant did not decline to answer the questions or suggest a desire to leave. Diggs did not tell Defendant he did not have to answer his questions, but neither did he tell him to remain in the car. During the entire course of his interaction with Defendant, Diggs was relaxed, polite, and respectful. There was nothing bullying or accusatory about Diggs's tone. Based on all of the circumstances surrounding the encounter, the court concludes that after Defendant was told that he was "good to go," a reasonable person would have believed that he was free to go. The Court accordingly holds that during the four minutes of conversation before he gave his consent to the search of his car, Defendant was not detained.

## C. Reasonable Articulable Suspicion

Even if, as Defendant contends, the additional questioning qualified as detention, the Court is satisfied that Diggs had a reasonable and articulable suspicion that criminal activity was afoot sufficient to justify the detention.

"[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

> In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

*Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000).

Diggs, a seasoned state trooper, cited a number of factors that made him suspect that criminal activity might be afoot: Defendant leaned back in an apparent attempt to hide as he passed the patrol car; Defendant immediately slowed down after passing the patrol car; Defendant's car had a strong odor of air freshener, which is often used to mask the smell of narcotic drugs; Defendant did not own the car he was driving, which is common if illegal activity is going on; Defendant's claim that he was attending a bachelor party on a Thursday night did not ring true to the trooper; Defendant's lack of knowledge when questioned further

about the wedding date could have been an indication of untruthfulness; and Defendant was driving on I-94, which is a pipeline for drugs from Chicago to Detroit.

Defendant contends that these facts do not rise to the level of reasonable articulable suspicion and are not sufficient to support a *Terry* stop because many people use air freshener, travel between Chicago and Detroit, and borrow cars, all for innocent reasons. Defendant refers the Court to *Townsend*, where the court considered many of the same factors articulated in this case, including dubious travel plans, travel from a narcotics source city to a narcotics destination city, and third-party ownership of the vehicle, and ultimately determined that these factors were not sufficient to give the officers reasonable suspicion to detain the defendants. 305 F.3d at 542-45.

The fact that individual factors may have an innocent explanation does not suggest that the basis for a *Terry* stop was missing. Whether or not an officer has a reasonable, articulable suspicion depends on the totality of the circumstances. *Townsend*, 305 F.3d at 542. Rather than accepting or rejecting each individual factor articulated by the officer, the Court is required to determine whether the "combination of factors" considered by the officer is sufficient for reasonable suspicion. *Id.* Moreover, "[e]ven in *Terry*, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation. . . . . *Terry* recognized that the officers could detain the individuals to resolve the ambiguity." *Illinois v. Wardlow*, 528 U.S. at 125.

In *Townsend* the court acknowledged that factors such as drug pipeline, third-party ownership of the vehicle, and dubious travel plans have been recognized as valid considerations in forming reasonable suspicion in other cases, but the court reasoned that under the facts of the case before it, the factors were all relatively minor and subject to qualification, and the case lacked any of the stronger indicators of criminal conduct. *Id*. at 545.

In this case, the drug pipeline, third-party ownership of the vehicle, and dubious travel plans were accompanied by suspicious driving behavior and an unusually strong odor of air fresheners. Diggs' detection of a strong odor of air fresheners was later corroborated when the troopers found three air fresheners in the van. None of these factors standing alone is illegal, nor would any one of them individually satisfy a test for reasonable suspicion. Nevertheless, taken together, and viewed from the vantage point of someone with Diggs' training and experience, they raised a red flag that criminal activity may be afoot. Based on the totality of the circumstances, the Court finds even if the questioning in the patrol car after the completion of the traffic stop amounted to detention, Diggs possessed the reasonable, articulable suspicion of criminal activity necessary to extend the scope and duration of the traffic stop.

**D. Consent to Search**

Defendant contends that his consent to search was not valid. Defendant has not suggested that the four minutes of questioning after he was told he was "good to go" were

so coercive such that his consent was not voluntary. Instead, he bases his challenge to the consent on the fact that the four-minute detention was illegal. He contends that because his consent was the product of the illegal detention, it must be suppressed as the fruit of the illegal detention.

Based upon the finding above that Defendant was not detained prior to giving consent, or, if he was, that it was justified by reasonable, articulable suspicion, the Court finds that Defendant's consent to search was not the product of an illegal detention.

Although Defendant has not argued that his consent was not voluntary, the Court believes it is advisable to make a finding on the voluntariness issue. "The Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation." *Florida v. Bostick*, 501 U.S. 429, 439 (1991). "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). The burden is on the government to show that consent was "freely and voluntarily given." *Id.* at 222. Consent is a waiver of Fourth Amendment rights. *Id.* at 241. Nevertheless, unlike trial rights, the waiver of Fourth Amendment rights need not be knowing and voluntary. *Id.* Consent may be given without knowledge of the right to refuse consent. *Id.* at 235-46. Officers need not expressly inform suspects that they are free to go before requesting permission to conduct a search. *Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996).

At the time Diggs obtained Defendant's consent to search, he was the only officer present. His request to search was phrased as a question rather than a command, and contained no threats or promises. He had already returned Defendant's paperwork, and he did not act in an overbearing, threatening, or aggressive manner toward Defendant. *See United States v. Ledesma*, 447 F.3d 1307, 1314-15 (10th Cir. 2006) (discussing factors to consider in evaluating whether an encounter is or is not consensual). Even if Defendant was detained, "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." *United States v. Watson*, 423 U.S. 411, 424 (1976). Defendant gave his consent to search the vehicle three times. The Court concludes that based on the totality of the circumstances, Defendant's consent to search was voluntary and was not the product of an illegal detention.

**E. Probable Cause to Seize and Search the Vehicle**

Defendant contends that the evidence obtained during the search should be suppressed because the troopers lacked probable cause to seize and search the vehicle.

Defendant gave consent to search the vehicle. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). In this case the trooper's request to search was preceded by an inquiry into whether Defendant had anything illegal in the van, including guns, currency, explosives, or drugs. By asking Defendant

15

whether he possessed any illegal contraband, he implicitly informed Defendant that these items would be the object of any search. *United States v. Garrido-Santana*, 360 F.3d 565, 576 (6th Cir. 2004).

In *United States v. Garrett*, No. 05-CR-80955, 2007 WL 3124660 (E.D. Mich. Oct. 25, 2007), the court held that because the trooper had asked about drugs and money, the scope of the defendant's consent to search would have included any portions of the vehicle where large sums of money or other contraband could be hidden, including secret compartments. *Id.* at *4. It is not necessary in this case to determine whether Defendant's consent to search his vehicle included consent to use power tools and to take out seats and carpet. Defendant's consent clearly authorized the troopers to examine the interior and exterior of his vehicle, and, by the time they began using power tools, taking out the seats, and pulling up the carpet, they had developed probable cause to believe that the automobile contained a secret compartment that could be used to transport contraband.

Under the automobile exception to the Fourth Amendment's warrant requirement, a warrantless search of a vehicle that has been stopped lawfully is permissible if the search is based upon probable cause to believe that the vehicle contains evidence of a crime. *California v. Acevedo*, 500 U.S. 565, 580 (1991); *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."

*Wyoming v. Houghton*, 526 U.S. 295, 302 (1999) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). Probable cause is determined under the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

In *United States v. Kincaide*, 145 F.3d 771 (6th Cir. 1998), the Sixth Circuit held that an officer's detection of a secret compartment in the undercarriage of the defendant's vehicle, which he knew could be used to transport drugs and money, was an important component of the circumstances that gave him probable cause to believe that the vehicle contained either contraband or evidence. *Id.* at 779.

In *United States v. Ledesma*, 447 F.3d 1307 (10th Cir. 2006), where the officers observed several suspicious modifications to a vehicle during a consensual search, the Tenth Circuit held:

> Because the evidence was highly probative of the existence of a secret compartment, and because it is difficult to imagine a licit purpose for a large hidden compartment in a vehicle the size of a Chevy van, these signs of a hidden compartment strongly suggest – and perhaps even singlehandedly establish – probable cause to search behind the side panels in the rear of the van.

*Id.* at 1318; *see also United States v. Garrett*, No. 05-CR-80955, 2007 WL 3124660, at *4 (E.D. Mich. Oct. 25, 2007) (holding that after the trooper discovered the false compartment in the vehicle, he had probable cause to search inside the compartment); *United States v. Plaskett*, 97 F. Supp. 2d 686 (E.D. Va. 2000) (holding that discovery of a false floorboard and secret compartment, together with knowledge that such compartments are often used to stow contraband, gave the trooper probable cause to search the van).

In this case, within minutes of being granted permission to search the vehicle, the troopers found evidence that the vehicle had been modified and likely contained a secret compartment. This information, together with the strong odor of air fresheners, Defendant's travel along a drug pipeline, the third-party ownership of the vehicle, and Defendant's dubious travel plans, gave the troopers probable cause to believe that the van contained evidence of a crime. Because they had probable cause, they were authorized to detain the vehicle and the driver and to continue their search for evidence of illegality, whether or not the Defendant was involved in that illegality. Moreover, once the troopers had probable cause to believe the vehicle contained evidence of a crime, it was reasonable for them to move the vehicle to the Michigan State Police post for a more extensive search. *See United States v. Olivera-Mendez*, 484 F.3d 505, 513 (8th Cir. 2007).

## III.

Upon review of the evidence, the Court concludes that the search of the vehicle was lawful, and that the evidence seized was not the fruit of any unlawful conduct. The Court will accordingly deny Defendant's motion to suppress.

Dated: March 15, 2010    /s/ Robert Holmes Bell
　　　　　　　　　　　　　　　ROBERT HOLMES BELL
　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE